Your Honors, may it please the Court. I am Ashley Harada, and I have the honor of representing Mr. Smith. When a person is serving a life sentence, no error is harmless. And in this case, there were several violations with regard to Rule 851 and Rule 32. Those are rules with specific protocols that need to be followed in order to ensure that a defendant understands what is happening and moving forward, especially a case with such significant consequences. The purpose of the 851 requirement is to make sure that a defendant makes an informed decision before proceeding to trial. And Lane and Ceballos require remand for resentencing. Now, Mr. Smith's rights have been violated, and he is serving that sentence of life. The Court ruled that this was a search incident to arrest, but it's our position that this was not a search incident to arrest, because at the point the search occurred, Mr. Smith had not been placed under arrest, nor had he been identified as William Maurice Smith. He had been identified as Will. Now, Counsel, there's an earlier case called Smith. I think Judge Wardlaw was actually on the panel in that case. And in that case, the Ninth Circuit held that as long as the search is roughly contemporaneous to the arrest, then it's okay. How do we get around that Smith case? I mean, and Judge Wardlaw wrote a concurrence in that case, but I don't think it's controlling. So assume that — assume not her opinion controls, but the Court's opinion controls. How do we get around that case? Well, I am familiar with that. And one of the problems that I saw with this supposed search incident to arrest was that this turned into a strip search incident to arrest. The trooper had patted Mr. Smith down several times, I believe two times prior to coming back, and then physically lifting his shirt. And it amounted to quite a violation of his privacy at that point in time. I mean, I think any time you have a search incident to arrest, there's going to be some violation of what we would normally think is privacy. I'm not sure what the officer has probable cause to arrest him at that time and notices there's something in his waistband. What is the officer to do? Is the officer under the Smith case, is the officer not allowed to look to see what it is? Well, in this case, he chose to do that by forcefully lifting his shirt, which I think was a bit unnecessary given the fact that there were no weapons to be located. And I understand the Court's position with regard to the other Smith case. I am familiar with that. Is there any other way we can distinguish that case? I haven't been able to identify any other distinguishing characteristics. The other, I guess, concern that I had was that if you look at Dickerson, this was a lot of squeezing, sliding, manipulation by the officer. And so it did — I was not trial counsel and I was not counsel at the time of the motion to suppress, but it did seem to be a bit excessive. If those — if that evidence was obviously excised from the warrants, we've got — I would submit to the Court that we don't have sufficient information for probable cause for the search warrant for the BMW or the hotel. One of my biggest concerns was the unanimity instruction was not given at trial. And I have compared this case to the Correra-Ventura case, and I am familiar with that. But the facts were somewhat different in this case because in this case, two firearms were located in a hotel room and one firearm was located in the BMW. In the Correra-Ventura case, all of the firearms were located in one specific residence, and so it's highly possible that the jury could have made their determination of guilt not agreeing as to which firearms it were. It could have been the two firearms in the hotel room or it could have been the one firearm in the BMW. And so we don't have unanimity if that's the case. The two firearms, were they part of the count related to the drugs, though? All three. Specifically? All three firearms were listed. I do concede that Rule 41 doesn't apply in this case with regard to my argument of the sloppy police work and violation of Smith's constitutional rights. But Crawford does state that if a search is conducted by State officers under a State warrant and is Federal in character, the legality of the search should be analyzed in light of the Federal constitutional requirements and those provisions of Search Warrant criminal rules designed to protect the integrity of Federal courts. And obviously, my client is very concerned that his rights were violated because the execution of the Search Warrant should not have occurred until after 10 o'clock p.m. and the labels on all the evidence seized reflect 5 p.m. Now, the District Court found that that was a mistake. Correct.  Correct. So tell us why that was clearly the factual finding that the search really occurred after 10 o'clock, the officers inexplicably, quite frankly, wrote 5 o'clock. Yes. Dumb mistake, but dumb mistakes are allowed if the District Court found that, in fact, it was a dumb mistake. Correct. So what is there to say was not a dumb mistake, but actually the search occurred at 5 rather than after 10 o'clock? Well, the testimony was that the search occurred at 10 o'clock. And again, I wasn't counsel at that time, but I have no reason to doubt that officer's truthfulness. My position would be that these things need to be followed. These rules are made for a reason. And my client has very significant concerns that slobby police work can have him in prison for the rest of his life and that these things need to be addressed appropriately. And so I understand that mistakes occur. I can certainly appreciate that. But when it comes to somebody's freedom forever, it's a problem. And I know you weren't trial counsel, but I just had a question, and maybe this is really a more question for opposing counsel here. A51s for life, at least when I was a prosecutor, were pretty rare. And I was wondering what was it about this case, to the extent you know, was it just plea offers were not taken, or how did this case get to mandatory life? I can't speak to that. I'm sorry. I'm not aware. If the panel has any further questions. Do you want to reserve the rest of your time? Sure, if necessary. Thank you. Good afternoon. Lori Sook for the United States. In answer to your question, it is very rare for us to file an 851 that mandates life. There were plea offers that were rejected, but that would in and of itself be a reason. The reason is six prior felony drug convictions. And that's the analysis that we use in the District of Montana is just that. How many, how long over a period of time. It is a remedy that we do not use often, and it was used in this case for that reason. I was just curious if there was an offer made in this case of less than life that was rejected. Many times. In fact, if you look at the procedural history of this case, it's rare for us to criminally complaint a defendant like Mr. Smith in, and we did that because of information that we had before, as well as the amount of drug that we had at the time put him in a perfect position, in our view, to cooperate with us. And that wasn't his choice, and we understand that. And so then we had to analyze his history, which, quite frankly, wasn't known to the extent at the time. Turning to what happened in January of 2015 on the day in question. Counsel, I have a question. Yes, Your Honor. Unlike Judge Owens and perhaps Judge Marquez, I'm not that familiar. In fact, I don't think I've ever seen an 851 before. But from what you said, it sounds like because he didn't want to cooperate by, say, snitching on suppliers or whatever, that this information came in response to that. Is that appropriate? Is that standard practice? That's not what I said, Judge Wardlaw. I said that negotiations were rejected by the defendant, but the only reason that this 851 was filed is because of the number of convictions. Simply if he had rejected our plea negotiations but only had, say, one or two prior felony convictions, this 851 would not have been filed. So it wasn't just simply that. It put him in a position, though, and the government in a position of then reviewing that. So what is the policy? Like how many prior felonies before you? There is not a specific policy that we have in the District of Montana or in the Department of Justice in general as to you have to have this many or that many, but we do consider in a situation like this how many over what period of time. It is a recidivist statute that Congress has put into place for individuals like Mr. Smith who have been drug users and traffickers for, quite frankly, their entire life. His first conviction started at age 19, and now he's in his 40s. And so at some point, as I stated at the sentencing to the district court, the statute and the government has to call the game. And that's what 851 allows us to do. The flip question is how many is enough? I mean, how many times do we not? So if you do something this drastic, you say you do it only in drastic circumstances. Yes. Didn't the district court judge follow the rule, the statute, to the letter? And did the district court judge do that here? No. And that is, there is no excuse for that. And it certainly isn't just the district court's fault. The government needs to be policing this as well. And certainly with the errors that were committed with respect to complying with 851B, the government's not going to put that all on the court. But we don't want to be here arguing harmless error, but that's where we are, Your Honor. And we believe it is harmless error in this case because of the statute of limitations provided under 851E and the fact that five of these convictions are outside of Mr. Smith's ability to even challenge them. That is different from the Rodriguez case where it was remanded because 851 wasn't at play. 851E. But I will tell you, the government, if we had any question, even standing here today, that these convictions were Mr. Smith's, we would tell you to remand, to give him an opportunity to challenge these. We have had no indication that any of the convictions are not him. And even on appeal, the focus of the appeal is procedural here. There is not a statement here, a conviction wasn't mine or this wasn't me. So just to follow on what Judge Wardlaw was asking, when he was brought in for this complaint, your expectation was that he would cooperate. We were hopeful, Your Honor. And was that one of the plea offers that were made to him, whether he cooperated? There were numerous plea offers, Your Honor. As you saw, there were seven continuance of the trial. There were four different counsel before we got to the fifth trial counsel. So we started over a number of times in this case. And certainly, were there plea agreements or plea offers that did not require cooperation? Certainly. Yes. Thank you. Turning to what occurred when we found the drugs. So the possession with intent to distribute, even though there was methamphetamine found in two locations, it's one crime. As you've read from the trial transcripts, I'm certain, this was an individual living in a motel who they surveilled at the motel. They had information that he was distributing methamphetamine out of that motel room, in fact, had done three controlled buys from his girlfriend who was living with him. They were driving the same car. They watched him earlier in the day get into the car and knew that he had a suspended license and active warrants for his arrest. And when he drove away, that is when the Montana State Trooper was called in to effect a traffic stop and arrest him for the outstanding warrants and for driving with a suspended license. And whether the trooper thought he was conducting a pat-down search, it was a search incident to arrest, which under the Smith case as well as others is roughly contemporaneous with arrest. So what occurred here very quickly, a methamphetamine pipe with residue was found on Mr. Smith, which expanded the scope of that search to anything that would be evidence of that crime as well. And methamphetamine certainly would be. So the district court, quite frankly, didn't find this a close call in terms of the fact that this evidence was seized as a search incident to arrest. With respect to the unanimity instruction, I think I've explained that with respect to the fact that it's one crime, and even though there were two locations where drugs were seized, that's a factual distinction that doesn't make a legal difference. It is one crime on that day, and not really ever citing a concurring opinion or really doing string cites or a block quote, I should say, that long. I did do that in this case because I found it instructive to explain to me at least how that worked and why it's not a unanimity problem if one juror finds this gun was possessed versus one juror finds that gun was possessed. Again, Your Honors, what I would say is there is no excuse for the mistakes that were made, but that, unfortunately, we always have to make that claim, I guess, when we're standing here asking you to affirm on harmless error, and that's what we're asking you to do. A remand in this case would result in absolutely the same sentence that was imposed. Okay. Thank you very much, counsel. Thank you. Sure. I somewhat disagree with the government's position that a remand would result in the same result because if you look at the Lane and Cervellos cases, which I cited and referenced in an earlier argument, those required remand for resentencing but without the use of the 851 enhancement. And so that would be our position if this case was remanded on the 851 issue. And I have nothing further unless you have additional questions. Okay. Thank you very much, counsel, for your argument. Thank you to both of you for your briefing argument today. This matter is submitted, and this panel is in recess until tomorrow.
judges: Wardlaw, Owens, Marquez